IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| BROOKE HENDERSON, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 6:21-cv-03219-MDH |
| | ) | |
| SCHOOL DISTRICT OF | ) | |
| SPRINGFIELD R-12, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before this Court is Attorney Hermann's response to this Court's Order to Show Cause. (Doc. 126). This Court previously ordered Attorney Hermann to show cause as to why statements made to the media related to the above-captioned case fail to violate certain ethical rules in Missouri and Georgia, where Attorney Hermann is licensed. (Doc. 115). Of particular importance is Missouri Rule of Professional Conduct 4-8.2, which prohibits attorneys from making statements known to be untrue or with reckless disregard for the truth.

In response, Attorney Hermann asks this Court to disregard the Missouri Supreme Court's *Westfall* holding. (Doc. 126 at 19). *See Matter of Westfall*, 808 S.W.2d 829, 837 (Mo. 1991) (objective standard appropriate when determining whether attorney spoke with "reckless disregard" of the truth when making statements about judge's integrity). In support, Attorney Hermann suggests subsequent Missouri Supreme Court opinions specifically call into question the objective standard in *Westfall*. Attorney Hermann also suggests certain cases decided by the United States Supreme Court subsequent to *Westfall* also call into question the *Westfall* rationale. This leads Attorney Hermann to conclude, "federal courts should no longer follow *Westfall*'s

1

reinterpretation of Rule 4-8.2, and instead should follow the Rule's plain text as the interpretation that most closely complies with the First Amendment." (Doc. 126 at 20).

Attorney Hermann, however, overstates any conflict between *Westfall* and subsequent opinions, from both the Missouri and United States Supreme Courts. In *Smith*, the Missouri Supreme Court discharged through a writ of habeas corpus an attorney's criminal contempt conviction. *Smith v. Pace*, 313 S.W.3d 124 (Mo. 2010). The Court specifically noted, "the result of this proceeding has no bearing on any disciplinary measures that may result from the attorney's conduct." *Smith* at 126. The Court vaguely opined that "the scrutiny of a state's interest in regulating lawyer speech may be significantly higher today than when this Court decided *Westfall*." *Smith* at 135. Nothing in *Smith*, however, could reasonably lead to the conclusion the Missouri Supreme Court has overruled, or even reconsidered, *Westfall's* objective standard for violations of Rule 4-8.2.

Similarly, in *Alverez*, the United States Supreme Court makes clear that prior Supreme Court cases explicitly finding false statements unworthy of constitutional protection appear to "derive from cases discussing defamation, fraud, or some other legally cognizable harm associated with a false statement, such as an invasion of privacy or the costs of vexatious litigation." *United States v. Alvarez*, 567 U.S. 709, 719 (2012). Attorney Hermann, however, fails to identify how public statements by an attorney made with reckless disregard for the truth fail to constitute a legally cognizable harm. *See Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S. Ct. 2004, 2016, 44 L. Ed. 2d 572 (1975) ("The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice and have historically been 'officers of the courts.'"). Further, *Alverez*, which concerned the constitutionality

2

Case 6:21-cv-03219-MDH   Document 128   Filed 05/24/23   Page 2 of 5

of a federal statute, does little to specifically address the analysis appropriate for matters of attorney discipline.

Whether an objective or subjective standard applies to Rule 4-8.2 violations, however, is, of course, related to, but separate from, the main issue. The focal point is whether Attorney Hermann's specific words violate Rule 4-8.2 as well the other professional rules cited in this Court's original Show Cause Order. Attorney Hermann's response fails to adequately address this matter. While counsel has forwarded a letter of apology to this Court, a copy of which is attached to this order as Exhibit 1, it too fails to directly address whether Attorney Hermann's words are false. Nor does the letter provide any basis for the decision to make the statements. This Court appreciates the letter and the decisions to both remove the statements from the Southeast Legal Foundation website and cancel other scheduled interviews. This Court, however, notes that Attorney Hermann has failed to publicly retract or clarify any prior statement.

A related issue is whether Attorney Hermann's statements constitute an effort to influence the outcome of pending litigation. Attorney Hermann contends the statements are not actionable because she did not intend to influence the outcome of litigation, noting they came after this Court already issued summary judgment. (Doc. 126 at 9). This contention, however, lacks merit. First, damage to the judicial system and professionalism of the bar can still result from statements made after a judicial decision is final. Here, however, the litigation is not final, as counsel is seeking appellate review. If successful on appeal, the matter will revert to this Court for additional consideration. Further, Attorney Hermann's comments led at least one media outlet to inquire as to what steps might be taken to influence the outcome of the case at the appellate level. Altogether, this shows Attorney Hermann's response also fails to adequately address concerns her statements

3

may impact an adjudicative proceeding, the emphasis underlying Georgia Rule of Professional Conduct 3.6 and Missouri Rule of Professional Conduct 4-3.6.

To be clear, Attorney Hermann's response discusses some parts of the specific statements identified by this Court in its original Show Cause Order. Attorney Hermann, for example, suggests when she described the undersigned as "a lone agenda-driven federal judge," what she intended to say is that this Court's summary judgment and attorney fees orders reflected an "agenda" to chill further lawsuits deemed frivolous. (Doc. 126 at 21-22). Though well-settled that bringing a §1983 lawsuit deemed frivolous introduces the possibility of attorney fees, Attorney Hermann nevertheless argues this somehow constitutes a "potentially troubling and newsworthy development in a new area of the law." (Doc. 126 at 24). Attorney Hermann's response also attempts to address her clam this Court's intent was to "deny 'teachers and parents' a cause of action relating to 'anti-racist' training." (Doc. 126 at 24). This position, however, misquotes Attorney Hermann's original statement, which reads in relevant part, "This is an effort by a lone agenda-driven federal judge to deny concerned teachers and parents the right to seek redress in court." (Doc 115 at 2). The scope of the original statement is far broader than that of the misquoted statement reflected in Attorney Hermann's response. Attorney Hermann's response also fails to address the part of her original statement that suggests this Court's intent was also to "protect so-called 'anti-racist' training in Missouri's public schools." (Doc. 115 at 2). Altogether, Attorney Hermann's response to this Court's original Show Cause Order simply fails to address the main issue at hand: how Attorney Hermann's specific words and sentences fail to violate Georgia Rule of Professional Conduct 3.6 and Missouri Rules of Professional Conduct 4-3.6 and 4-8.2. Put differently, the focal issue is how Attorney Hermann's specific words about this Court do not reflect a reckless disregard for truth.

Therefore, this Court **ORDERS** Attorney Hermann to file, no later than June 9, 2023, a supplementary response to this Court's Show Cause Order, specifically addressing whether particular statements made by Attorney Hermann, identified in the original Show Cause Order, were true and the basis for such belief. Attorney Hermann should identify in detail any research, interviews, or findings, supporting her belief that her statements were true, including prior orders by this Court in other cases. The response should identify any orders by this Court awarding attorney fees in favor of a party against whom a constitutional claim was filed, which Attorney Hermann considered prior to making her statements. The response should also identify any orders by this Court awarding attorney fees in favor of a party filing a constitutional claim, which Attorney Hermann considered. Further, the response should specifically address why Attorney Hermann's statements referred to claims by parents rather than claims by public school employees, subject of the instant litigation. Any case involving parents' constitutional rights considered by Attorney Hermann in making the statements should be specifically identified, including any case in which this Court awarded attorney fees against parents.

**IT IS SO ORDERED.**

Dated: May 24, 2023                       */s/ Douglas Harpool*
                                                                                **DOUGLAS HARPOOL**
                                                                                **United States District Judge**