# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

BROOKE HENDERSON and JENNIFER LUMLEY,

     Plaintiffs,

v.

SCHOOL DISTRICT OF SPRINGFIELD R-12, BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF SPRINGFIELD R-12, GRENITA LATHAN, YVANIA GARCIA-PUSATERI, and LAWRENCE ANDERSON,

     Defendants.

Case No. 6:21-cv-03219-MDH

---

## PLAINTIFFS' MOTION TO REFER OR RECUSE WITH SUGGESTIONS IN SUPPORT

---

**COME NOW** Plaintiffs Brooke Henderson and Jennifer Lumley, and Attorney Kimberly Hermann, pursuant to Local Rule 83.6, 28 U.S.C. § 455, and the Due Process Clause of the Fifth Amendment, and, for the reasons stated in the incorporated suggestions in support, move this Court to refer its disciplinary investigation to the Western District *en banc*, or, in the alternative, to recuse.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................................iii

INTRODUCTION.....................................................................................................1

STATEMENT OF FACTS........................................................................................4

    A.  Attorney Hermann's Statements.................................................................4

    B.  The Court's Show Cause Order...................................................................4

    C.  Plaintiffs' Response.....................................................................................5

    D.  The Court's Second Order of May 24, 2023..............................................6

ARGUMENT............................................................................................................8

    I.      The Court must transfer consideration of any discipline of
           Ms. Hermann to the Western District *en banc* in accordance
           with the Western District's Local Rules......................................................8

    II.     If the Court will not transfer consideration of this matter to the
           Western District *en banc*, the Court should recuse itself from the
           investigation and imposition of any discipline..........................................11

          a.  Due process requires recusal to avoid the Court serving as
              both the accuser and adjudicator of whether misconduct
              occurred...............................................................................................12

              i.     The Second Show Cause Order places the Court
                     in the position to divine his own intent and
                      determine if Ms. Hermann's statements
                     regarding his intent are "true."...........................................12

              ii.    Due process prohibits the Court from serving as
                     the judge of its own complaint...........................................14

           b.  Recusal is required under 28 U.S.C. § 455.........................................17

    III.    Plaintiffs respectfully request an administrative stay while this
           Court takes up this request......................................................................19

CONCLUSION.......................................................................................................19

# TABLE OF AUTHORITIES

**Case**                                                                 **Pages**

*Caperton v. A.T. Massey Coal Co.,*
    556 U.S. 868 (2009) .................................................................... 15

*Cooke v. United States,*
    267 U.S. 517 (1925) .............................................................. 15, 16

*In re Fletcher,*
    424 F.3d 783 (8th Cir. 2005) ................................................... 8, 11

*In re Murchison,*
    349 U.S. 133 (1955) .............................................................. 14, 15

*Jetton v. McDonnell Douglas Corp.,*
    121 F.3d 423 (8th Cir. 1997) .......................................................... 8

*Liteky v. U.S.,*
    510 U.S. 540 (1994) ...................................................................... 17

*Offutt v. United States,*
    348 U.S. 11 (1954) ............................................................... 15, 16

*Standing Comm. v. Yagman,*
    55 F.3d 1430 (9th Cir. 1995) ......................................................... 16

*United States Dep't of Justice v. Mandanici,*
    152 F.3d 741 (8th Cir. 1998) .......................................................... 8

*Willhite v. Collins,*
    459 F.3d 866 (8th Cir. 2006) .......................................................... 8

*Williams v. Pennsylvania,*
    579 U.S. 1 (2016) ......................................................................... 14

**Statutes**

28 U.S.C. § 455 ............................................................................... *passim*

28 U.S.C. § 2071 ................................................................................... 8

**Court Rules**

Ga. R. Prof. Cond. 3.6 ...................................................................... *passim*

Mo. Sup. Ct. R. 4-1.6 .................................................................................... 11

Mo. Sup. Ct. R. 4-3.6 .............................................................................. *passim*

Mo. Sup. Ct. R. 4-8.2 .............................................................................. *passim*

Western District L.R. 83.5 ................................................................... 1, 5, 11

Western District L.R. 83.6 ........................................................................ *passim*

# INTRODUCTION

At the core of the current proceeding is an issue now being litigated in the Eighth Circuit. Plaintiffs have appealed this Court's finding that their civil rights claims were frivolous and its award of all attorneys' fees expended and sought by the government Defendant. After that appeal, Plaintiffs' counsel Kimberly Hermann sharply criticized the Court's decisions. She then apologized to the Court, withdrew the statements from counsel's website, and canceled and ceased additional media interviews. Plaintiffs continue to argue in the Eighth Circuit (now, supported by amici from across the ideological spectrum) that this Court's fee award was excessive; contrary to the spirit of 42 U.S.C. §1988; extraordinary when compared to other cases; and, at the very least, likely to chill not only lawsuits like the underlying case, but all civil rights litigation.

On April 18, 2023, this Court issued an Order to Show Cause, stating that "Plaintiffs are ORDERED to show cause no later than April 20, 2023 as to how Attorney [Kimberly] Hermann's statements fail to violate [Rules of Professional Conduct 3.6 and 8.2], made applicable through [Local Rules] 83.5 and 83.6, and why sanctions should not be imposed for any such violation." [Doc. 115 at 2]. The Order hinted, but did not expressly state, that the Court was conducting an investigation and making determinations reserved to the Western District *en banc*, under Western District Local Rule 83.6(d). Plaintiffs raised this issue in their May 4 response. [Doc. 126.]

Now, however, the Order of May 24, 2023 [the "Second Order," Doc. 128] removes any ambiguity. It explicitly recasts the original Order as demanding a response from "Attorney Hermann" rather than Plaintiffs; it explicitly recasts Plaintiffs' May 4th Response as the response of "Attorney Hermann;" and now, finding that response unsatisfactory, explicitly demands that "Attorney Hermann" respond to an investigation into the materials she "considered" in making her statements. Although any judge of this District may "initiate" an investigation, ***it is the en banc***

1

***Court*** that "must undertake its own investigation" if it does not appoint a special master or refer the matter to a state bar. Local Rule ("LR") 83.6(d)(2)(A) and (B). Regardless of which route the *en banc* Court chooses, the Local Rules include procedural safeguards, such as a finding by the Court *en banc* of probable cause; a "short and plain statement" of the grounds for potential discipline in an Order to Show Cause allowing for a response from the accused; a three-judge hearing of disputed facts raised in the response that, importantly, ***does not involve the complaining judge***; and approval by the Court *en banc* of the hearing panel's findings and recommendations. LR 83.6(d)(3).

The Court's Second Order, and its recasting of the original Order, makes clear that this is an investigation into Attorney Hermann for purposes of punishing her outside of the required process and protections of Local Rule 83.6. For that reason, this Court should terminate its investigation and, if it desires, forward or relinquish this matter to the attention of the Chief Judge so that it can be taken up by the Western District *en banc*.

The Second Order also presages due process violations. The Court has now adopted an interpretation of Rules 3.6 and 8.2[1] that will require it to consider evidence and reach conclusions that make the Court the judge of its own case. Attorney Hermann's core criticism of the Court's fee award—made in her Statements after the case was on appeal, and then in Eighth Circuit briefing—is that it is extraordinary, and has the inescapable effect and, based on the Court's own statements in this case, the intent, of chilling future lawsuits. Plaintiffs' response to the April 18 Order, then, were that her Statements were: (1) not about the Court's integrity or qualifications; and (2) her own opinions and analysis, rationally based on the express statements of the Court on the record and in its decisions, that mirrored Plaintiffs' arguments in the Eighth Circuit.

---

[1] At issue are Missouri Supreme Court Rules 4-3.6 and 4-8.2, and Georgia Rule of Professional Conduct 3.6, which mirrors its Missouri counterpart. This motion will hereinafter reference the rules as "Rule 3.6" or "Rule 8.4."

In the Second Order, the Court has rejected those positions. It has decided that Attorney Hermann's statements were public criticisms of the Court's own integrity and qualifications. It has decided that they are statements of fact about what the Court subjectively intended when it awarded fees. Finally, the Court has decided that Attorney Hermann bears the burden of proving her asserted "fact" about its intent is true, and convincing the Court that its internal conviction about its own subjective intent has been mistaken. If the Court believes its subjective intent cannot be fairly derived from its decisions and statements on the record in this case, but is instead a "fact" known only to the Court, the Court necessarily becomes the finder of "facts" known only to it. Even more troubling, it relates to a matter that this Court believes implicates its integrity and qualifications. Under the Court's logic, it can only *avoid* punishing Attorney Hermann if it concludes that its own integrity and qualifications are indeed worthy of criticism, and that it did, after all, intend to chill future lawsuits by awarding fees. That is not an inquiry that this or any Court should undertake for itself, under both the Due Process Clause and the federal recusal statute, 28 U.S.C. § 455. Thus, if for any reason the Court chooses not to relinquish this matter to the Western District, it must recuse.

Plaintiffs recognize that this motion invites the Court to make what may be difficult decisions. They therefore respectfully request an administrative stay of the Second Order while the Court takes it up, and an extension of their deadline to respond to the Second Order of ten days from any decision by this Court declining to relinquish the matter or recuse.

**STATEMENT OF FACTS**

**A. Attorney Hermann's Statements**

1. After the Court's decisions in this case granting summary judgment in favor of the Defendants and requiring Plaintiffs to pay Defendants' attorney's fees, and the filing of the appeals therefrom, Attorney Hermann made three sets of statements (the "Statements") regarding the Court's decisions which are at issue.

2. The first statement comes from an April 11, 2023, press release issued by Southeastern Legal Foundation which quotes "SLF General Counsel Kim Hermann" as saying: "This is an effort by a lone agenda-driven federal judge to deny concerned teachers and parents the right to seek redress in court and to protect so-called 'anti-racist' training in Missouri's public schools." (the "April 11th Statement").

3. The second, made in an April 12, 2023, interview with Newsmax, said that the Court's decision "is closing the courthouse doors" and that "this will prevent every single person that has a potential First Amendment claim against the government...from ever being able to bring a lawsuit" (the "April 12th Statement"). The April 12th Statement drew a question from the Newsmax host regarding Plaintiffs' appeal currently pending before the Eighth Circuit; the host asked, "How can we help? How can we get ahold of these guys?"

4. The third statement, in an April 13, 2023, interview with Fox News, said that the "point" of the Court's ruling on attorney's fees "is to chill speech" and that the "intent of [the decision] is to stop parents and teachers from ever bringing a lawsuit again" (the "April 13th Statement").

**B. The Court's Show Cause Order**

5. On April 18, 2023, the Court issued a Show Cause Order [Doc. 115] identifying Ms. Hermann's three statements above and ordering Plaintiffs:

[T]o show cause no later than April 20, 2023 as to how Attorney Hermann's statements fail to violate Georgia Rule of Professional Conduct 3.6 and Missouri Rules of Professional Conduct 4-3.6 and 4-8.2, made applicable through United States District Court for the Western District of Missouri Local Rules 83.5 and 83.6, and why sanctions should not be imposed for any such violation.

*Id.* at 2.

### C. Plaintiffs' Response

6. Plaintiffs retained the undersigned counsel for the response, which the Court allowed Plaintiffs to file on May 4, 2023. [Doc. 126]. Southeastern Legal Foundation removed all the Statements from its website, and declined and withdrew from further interviews, and Plaintiffs' counsel repeatedly represented that it was taking all of these steps in a public filing. *Id.* at 8. Attorney Kim Hermann also apologized to the Court in a separate letter. *Id.*

Plaintiffs argued that Attorney Hermann's statements complied with Rules 3.6 and 8.2.

7. Tracking the language of Rule 3.6, Plaintiffs showed that Ms. Hermann neither "knew" nor "reasonably should have known" that the statements "will have a *substantial* likelihood of *materially prejudicing* an adjudicative proceeding in the matter," because, having been made after the filing of the Notice of Appeal, they were far removed from the type of matter in which courts apply Rule 3.6. (emphasis added). Specifically, the rule is almost never applied in a civil, bench-tried case with few factual disputes (and none material), and if the matter does return to this or any Court, it will be at least six months from now. [Doc. 126 at 6-9].

8. With respect to Rule 8.2, which states that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge," Plaintiffs showed as follows:

    a. The Statements criticizing the basis for this Court's decision were not statements concerning the "qualifications or integrity of a judge." [Doc. 126 at 10, 13, 15, 19].

    b. The accuser bears the burden of establishing falsity. *Id.* at 10.

c. Related to point 2, statements of opinion or hyperbole are not statements of fact and therefore cannot fall within the rule. The context was clear that the Statements were an attorney's opinion criticizing the basis for this Court's decision. The basis for this opinion was detailed at length with cites to the Court's own statements on the record and in its decisions. *Id*. at 11, 13-19.

d. If the Court were to resolve all of the above against the speaker and reach the rule's scienter requirement—that the lawyer must know the statement to be false or must speak with reckless disregard—the Court should apply the subjective First Amendment-based standard from which the language of the rule was derived, rather than cases like *Matter of Westfall*, 808 S.W.2d 829, 837 (Mo. banc 1991) that hold a less-protective, objective standard is required. *Id*. at 11-13. Under either standard, the Statements passed muster. *Id*. at 13-19.

e. If despite all of this, the Court was inclined to impose sanctions, Plaintiffs challenged the constitutionality of Rule 8.2. [Doc. 126 at 20-23].

9. Finally, Plaintiffs showed that if the Court intended to investigate and impose discipline against an attorney for violations of the Rules of Professional Conduct, rather than to exercise its inherent power to sanction parties to maintain control of ongoing proceedings, the matter must be transferred to the Western District under Local Rule 83.6. *Id*. at 23-26. Plaintiffs also showed that due process concerns impose limits on any power to sanction parties in a proceeding. *Id*. at 26-31.

**D. The Court's Second Order of May 24, 2023**

10. On May 24, 2023, this Court met this response with a second Order that found Plaintiffs' May 4th response "fails to address the main issue at hand," and "fails to adequately address this matter." [Doc. 128 at 3-4.] The Court characterized Plaintiffs' filing as "Attorney Hermann's response" to the Order to Show Cause. *Id*. at 1. Similarly, it recast its original Order to Show Cause, which had been directed to "Plaintiffs" (*see* Doc. 118 at 2: "***Plaintiffs*** are **ORDERED** to show cause…") stating instead that "This Court previously ordered ***Attorney Hermann*** to show cause…" [Doc. 128 at 1 (italics added for emphasis)].

11. After beginning with a discussion on *Westfall*, the Court identified two specific concerns with Plaintiffs' response. First, it faulted Attorney Hermann's letter of apology because it "fails to directly address whether Attorney Hermann's words are false." [Doc. 128 at 3]. Second, it stated

6

that "the focal issue is how Attorney Hermann's specific words about this Court do not reflect a reckless disregard for truth." *Id*. at 4. Relying on this point, it ordered "Attorney Hermann to file" by June 9, 2023, a "supplementary response" "specifically addressing whether [the Statements]…were true and the basis for such belief." *Id*. at 5. The Court went on to list specific facts Ms. Hermann would need to establish "her belief that the statements were true," including:

- Specifically addressing whether particular statements made by Attorney Hermann, identified in the original Show Cause Order, were true and the basis for such belief;
- Identifying in detail any research, interviews, or findings, supporting her belief that her statements were true, including prior orders in other cases;
- Identifying any orders by this Court awarding attorney fees in favor of a party against whom a constitutional claim was filed, which Attorney Hermann considered prior to making her statements;
- Identifying any orders by this Court awarding attorney fees in favor of a party filing a constitutional claim, which Attorney Hermann considered;
- Specifically addressing why Attorney Hermann's statements referred to claims by parents rather than claims by public school employees, subject of the instant litigation; and,
- Identifying any case involving parents' constitutional rights considered by Attorney Hermann in making the statements, including any case in which this Court awarded attorney fees against parents.

*Id*. at 5.

**ARGUMENT**

I. **The Court must transfer consideration of any discipline of Ms. Hermann to the Western District *en banc* in accordance with the Western District's Local Rules.**

The Western District of Missouri has, pursuant to its statutory authority, promulgated rules of practice and procedure which provide the sole mechanism for this Court to investigate, adjudicate, and, if appropriate, punish an attorney for violations of the Rules of Professional Conduct in this District. Accordingly, this Court must immediately cease its investigation and, if it desires, transfer or relinquish this matter to the Court *en banc* for an investigation and decision that complies with Local Rule 83.6(d)(2).

The Court *en banc* possesses inherent authority to prescribe its own rules of practice and procedure. *See* 28 U.S.C. § 2071(a). Those rules remain in effect unless modified or abrogated by the Eighth Circuit Judicial Counsel. § 2071(c). Once enacted, local rules have the force and effect of law and bind the parties and the court which promulgated them until they are changed in an appropriate manner. *See Jetton v. McDonnell Douglas Corp.*, 121 F.3d 423, 426 (8th Cir. 1997). This is true not only as a matter of federal statute, but as a matter of Fifth Amendment Due Process; by enacting a formal process for reviewing violations of the Rule of Professional Conduct, the *en banc* Court laid out a mandatory minimum process to which an attorney is "due."

Adherence to the local rules is particularly important in cases of attorney discipline. In such matters, due process requires, at a minimum, notice and an opportunity to be heard, "and that the district court follow its procedural rules governing attorney discipline." *In re Fletcher*, 424 F.3d 783, 792 (8th Cir. 2005). Crucially, "a district court's inherent power to discipline attorneys who practice before it does not absolve the court from its obligation to follow the rules it created to implement its exercise of such power." *United States Dep't of Justice v. Mandanici*, 152 F.3d 741, 745 n. 12 (8th Cir. 1998); *see also Willhite v. Collins*, 459 F.3d 866, 871 (8th Cir. 2006). When

confronted with situations in which a district court did not comply with its own local rules regarding attorney discipline, the Eighth Circuit has remanded for further proceedings with explicit instructions to "follow the procedures of its local rules." *Id*.

Local Rule 83.6(d)[2] articulates in detail the mandatory and exclusive procedure for investigating allegations of misconduct and conducting disciplinary proceedings. "When misconduct, or allegations which, if substantiated, would constitute misconduct… come to the attention of a judge, whether by complaint or otherwise… the Judge may initiate a disciplinary investigation." LR 83.6(d)(1). Importantly, although any individual judge may *initiate* an investigation, the Local Rules do not contemplate or provide for an individual judge to also *conduct* and direct the investigation. Instead, this investigatory role is solely vested in the Court *en banc*. *See* LR 83.6(d)(2)(A)-(C).

Once an investigation has been initiated by a judge, the role of the individual judge ceases and the Court *en banc* is presented with four options. First, it may refer the matter to an attorney to serve as an special master. LR 83.6(d)(2)(A). That special master may then "perform any appropriate task, including investigating the case, determining whether probable cause exists to believe that an attorney has violated rule 83.6(c), prosecuting a formal disciplinary proceeding, and formulating another appropriate recommendation." LR 83.6(d)(2)(A)(i). Importantly, after the special master conducts an investigation, the special master "must demonstrate" any recommendation that probable cause be found "to the Court en banc." LR 83.6(d)(2)(A)(iii). The

---

[2] Plaintiffs' May 4, 2023 Response to Order to Show Cause mistakenly cited a version of the Rule 83.6(d) that was superseded on December 1, 2022, but that is still available online. The primary change is that subsection (d)(1) of the old Rule assigned the duty to "initiate" an investigation to "the Clerk," and now under that same subsection, either a judge or the "Chief Judge" may "initiate" an investigation. Under both versions, the conduct and direction of the investigation and all subsequent proceedings remain under the control of the Court en banc rather than any complaining judge. See LR 83.6(d).

*en banc* Court then directs the attorney to show cause why he or she should not be disciplined, identifying any factual disputes or matters in mitigation. *Id*.

Second, if the Court *en banc* does not appoint an attorney to serve as special master, the Court *en banc* "must undertake its own investigation." LR 83.6(d)(2)(B). It then determines whether there is probable cause to believe that the attorney has violated Local Rule 83.6(c). *Id*. If the Court *en banc* determines misconduct has occurred, it must then serve the show cause order— an order that contains a short and plain statement of each ground for discipline and that directs the respondent to show cause why he or she should not be disciplined. *Id*.

The third option available to the Court *en banc* is that it may refer the matter to the disciplinary authorities for the appropriate state bar to investigate. LR 83.6(d)(2)(C).

The final option available to the Court *en banc* is that it may, at any time, conclude that a disciplinary investigation is not warranted and that no disciplinary action will be taken.

Importantly, though the Local Rules vest authority in the Court *en banc* (or a special master appointed by the Court *en banc*) to actually conduct an investigation, the Local Rules do not confer investigatory authority on any individual judge, let alone the complaining judge. Rather, individual judges only possess discretion to *initiate*—not conduct—an investigation. This makes sense. As explained more completely below, a plethora of due process concerns arise when a complainant-judge then presides over the ensuing investigation and adjudication of the accuracy and propriety of statements made about that same judge. *See* Section II(a)(ii), *infra*. And as a practical matter, where (as in the Second Order at page 5) the investigation forces a party to publicly disclose its confidential attorney work product to the complaining party (this Court) and the opposing party while that very matter is being litigated (now on appeal in the Eighth Circuit), it directly impinges upon counsel's ability to zealously litigate and counsel's duty to its own client to maintain

confidential information. *See, e.g.*, Mo. Sup. Ct. R. 4-1.6. It also places the Court in the position of reviewing internal work product on a matter that may come back before that very Court were the matter to be remanded and not reassigned. Concerns like these surely motivated the Local Rule.

Here, the Second Order makes clear that this Court is conducting an investigation of Attorney Hermann's state of mind for purposes of Rule 8.2, that it views its orders as compelling her to respond, that it views Plaintiffs' responses as hers, and that it is continuing to consider Missouri and Georgia disciplinary rules because they are "made applicable through United States District Court for the Western District of Missouri Local Rules 83.5 and 83.6." *See* Doc. 118 at 2. This matter is moored to the mandatory procedures of Local Rule 83.6. Therefore, the Court must refer and relinquish this matter to the Court *en banc*.

Though the Court certainly had the discretion under the Local Rules to *initiate* an investigation when Ms. Hermann's statements came to the Court's attention, the Local Rules require that any further proceedings—including the determination of who will investigate, probable cause, and a weighing of factual and other issues—be controlled by the Court *en banc*. *See* Rule 83.6(d)(1). Importantly, that procedure requires that the complaining judge ***not*** sit on a three-judge panel that determines disputed facts. The procedure for investigating and issuing attorney discipline under Local Rule 83.6(d) is both straightforward and mandatory as a matter of due process. *See Fletcher*, 424 F.3d at 792. Accordingly, this Court must cease its investigation and, if it desires, refer and relinquish the matter to the Court *en banc*.

## II.     If the Court will not transfer consideration of this matter to the Western District *en banc*, the Court should recuse itself from the investigation and imposition of any discipline.

Aside from the mechanical operation of the Local Rules and the Court's ministerial duty to comply with them, the peculiar substance of the potential disciplinary violations the Court is

investigating improperly render the Court the judge of its own case. Key elements of the Court's apparent disciplinary theories—theories that, to be clear, the Plaintiffs dispute—depend entirely on the Court's untestable, subjective beliefs about its own intent and integrity in awarding fees. Under Rule 3.6, this includes the finding of a reasonable likelihood of material prejudice to an adjudicative proceeding, which the Court now indicates depends in part on prejudice to its own decision-making from the bench should the case be remanded and not reassigned after Plaintiffs' ongoing appeal in the Eighth Circuit. Under Rule 8.2, this includes an assumption that Attorney Hermann's criticism of the Court's decisions went to Your Honor's "integrity and qualifications," that the criticism was not an opinion, rhetorical hyperbole, or analysis that parallels Plaintiffs' current briefing in the Eighth Circuit, but was instead a provably true or false statement about the Court's subjective intent, and that the Court will now decide whether Attorney Hermann correctly stated its own subjective intent on a matter that decides whether the Court acted with integrity. Now that this has become the inquiry, the Court has become the judge of its own case and must recuse.

> **a. Due process requires recusal to avoid the Court serving as both the accuser and adjudicator of whether misconduct occurred.**
>
> > **i. The Second Show Cause Order places the Court in the position to divine his own intent and determine if Ms. Hermann's statements regarding his intent are "true."**

The Second Order was the first time the Court revealed its position and plan for proceeding on several points. These included the following:

(1) "Ms. Hermann," rather than the Plaintiffs, was now being treated as the party obligated to make showings;

(2) The burden would be placed on her to *disprove* the elements of Rule 8.2, including proving truth, rather than placing the burden on the accuser to prove the element of falsity;

(3) The "focal point" on Rule 8.2 has narrowed to the questions of (a) falsity and (b) Ms. Hermann's degree of knowledge of falsity.

(4) As a corollary to point 3, the Statements will now be construed as provably true or false statements of fact about the Court's subjective intent in imposing fees. The controlling question that Ms. Hermann must now prove is "true," before this very Court, is what the Court subjectively intended to do when it imposed fees.

(5) Also, as a corollary to point 3, the Court has necessarily decided every other Rule 8.2 issue regarding the Statements against Ms. Hermann. This includes: (a) construing Statements criticizing the Court's decision as an attack on its integrity or qualifications; (b) deciding that the Statements were not opinions or rhetorical hyperbole; and (c) deciding that, in proving the "truth" of any Statement about the Court's "intent," Ms. Hermann cannot rely on the Court's statements in the record in this case or the text of the Court's decisions themselves. Instead, in order to avoid discipline under Rule 8.2, Ms. Hermann must now establish to this Court's satisfaction that the Court's own prior decisions evidence a trend in favor of chilling constitutional claims, and that this trend justifies Ms. Hermann's statement about this particular decision.

(6) For purposes of Rule 3.6, the Court is at least considering its own reaction to the Statements upon potential remand as "material prejudice" in an ongoing "proceeding."

Thus, it now appears unmistakably that the Court views Ms. Hermann's Statements as expressing a negative view of its own integrity. It intends to treat her criticism of the Court's large award of fees as a provably true or false statement regarding the Court's subjective "intent." The Court will then establish the issue of truth or falsity by examining the Court's own subjective intent. The Court will also establish what parts of its own written decisions and statements on the record in this case are sufficient to controvert the Court's own pre-existing view of its subjective intent, and which of its own decisions or statements were fair for Ms. Hermann to consider. All of these decisions necessarily make the Court the judge of its own case.

Likewise, with respect to Rule 3.6, the Court for the first time suggests that even in a civil, non-jury trial without substantial disputes of fact that has now left the district court and is before the Eighth Circuit, the Court might find itself in a position of "material[] prejudice" in a potential remand at least six months from now. Although it is rare for a civil bench trial to ever implicate

13

Rule 3.6, particularly long after extrajudicial statements are made, this Court's mode of analysis—weighing its own degree of likely prejudice, a personal factor known only to it—once again makes the Court the judge of its own case. As discussed below, these factors not only underlie Local Rule 83.6, they suggest that based on the revelations in the Second Order, recusal is now appropriate.

### ii. Due process prohibits the Court from serving as the judge of its own complaint.

Given the tripartite role assumed by the Court as (1) the complainant having accused Ms. Hermann of making Statements which violate the Rules of Professional Conduct, (2) the repositor of the sole evidence of its own intent in granting summary judgment and assessing attorney's fees, and (3) the adjudicator of whether or not Ms. Hermann's Statements regarding the Court's subjective intent were "false," and whether such false statement was reasonable, due process requires recusal. A neutral judge (or panel, under the Local Rules) uninvolved with the underlying litigation and not the subject of the statements at issue should decide whether Ms. Hermann's statements violate the Rules of Professional Conduct, including, if necessary, by determining the Court's actual intent in issuing the relevant orders.[3]

Due process guarantees "an absence of actual bias" on the part of a judge. *In re Murchison*, 349 U.S. 133, 136 (1955). "To establish an enforceable and workable framework, the Court's precedents apply an objective standard that, in the usual case, avoids having to determine whether actual bias is present." *Williams v. Pennsylvania*, 579 U.S. 1, 8-9 (2016). The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, "the

---

[3]As addressed above, the Western District's Local Rule 83.6 prescribes the process due to an attorney facing allegations of misconduct, including alleged violations of the Rules of Professional Conduct. That rule contemplates that the Court *en banc* would resolve allegations of misconduct after investigation by a special master or the *en banc* court itself, but never an investigation or adjudication by the complainant-judge. This rule necessarily avoids the present due process conundrum by entrusting the adjudication of the misconduct allegations to the *en banc* court, rather than to any individual judge before whom a case may be pending. The latent problems with this method of proceeding are compounded given that the inquiry pertains to statements the judge believes implicate his own integrity, as related more fully below.

average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Id.* (citing *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868, 881 (2009)).

The Supreme Court has determined that an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case. *See Murchison,* 349 U.S. at 136–137. This objective risk of bias is reflected in the due process maxim that "no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." *Id.* at 136.

The risk is at its apogee when the statements at issue touch personally on the judge's qualities, characteristics, or actions, such that the judge may become "personally embroiled" in the outcome of the charge. *See Offutt v. United States*, 348 U.S. 11, 17 (1954). In reversing a contempt conviction, the Supreme Court noted the special consideration due when the potentially offending words concern the same judge presiding over the contempt proceeding:

> Another feature of this case seems to call for remark. The power of contempt which a judge must have and exercise in protecting the due and orderly administration of justice, and in maintaining the authority and dignity of the court, is most important and indispensable. But its exercise is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions. This rule of caution is more mandatory where the contempt charged has in it the element of personal criticism or attack upon the judge. The judge must banish the slightest personal impulse to reprisal, but he should not bend backward, and injure the authority of the court by too great leniency. The substitution of another judge would avoid either tendency, but it is not always possible. Of course, where acts of contempt are palpably aggravated by a personal attack upon the judge, in order to drive the judge out of the case for ulterior reasons, the scheme should not be permitted to succeed. But attempts of this kind are rare. All of such cases, however, present difficult questions for the judge. All we can say upon the whole matter is that, where conditions do not make it impracticable, or where the delay may not injure public or private right, a judge, called upon to act in a case of contempt by personal attack upon him, may, without flinching from his duty, properly ask that one of his fellow judges take his place.

*Cooke v. United States*, 267 U.S. 517, 539 (1925) (internal citations omitted).

Rule 8.2 is only violated if an attorney makes a statement which reflects personally on a judge, that is, "a statement that the lawyer knows to be false . . . *concerning the qualifications or integrity of a judge*[.]" (emphasis added). Here, the Court takes issue with statements calling him a "lone agenda-driven federal judge" and asserting that his decisions in this case will "clos[e] the courthouse doors." *See* First Show Cause Order [Docket No. 115]. Because we know the Court must decide—and has decided—that it perceives this as a factual attack on its very "integrity," rather than as an opinion, hyperbole, or analysis criticizing the basis for the decision, this implicates the complainant judge precisely in the areas where the Supreme Court in *Cooke* and *Offutt* warned due process may be offended: the same judge that is the subject of the statements adjudicates their character and truthfulness, and the mental state of the attorney making the statements.

Additionally, the First Amendment requires that the burden be placed on the complainant to prove to a neutral factfinder each element of a Rule 8.2 disciplinary violation, including falsity and the speaker's requisite mental state. *See* Plaintiffs' Response [Doc. 126] at 10-11, citing, *inter alia*, *Standing Comm. v. Yagman*, 55 F.3d 1430, 1438 (9th Cir. 1995). Yet here, the Court *is* the complainant and has shifted the burden to Ms. Hermann to prove to it that her Statements about the Court's own intent were *not* false, and that they were objectively reasonable.

Due process and the First Amendment considerations implicated in subjecting out of court political speech to potential reprimand require that Ms. Hermann be afforded the full process due under these unique circumstances by having a neutral adjudicator (or panel, under the Local Rules) determine whether she violated the Rules of Professional Conduct.

### b. Recusal is required under 28 U.S.C. § 455

For the same reasons recusal is required under the Due Process Clause, it is required under the general recusal statute, which codifies longstanding recusal principles. The statute provides, in relevant part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances:

>> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

> [. . .]

28 U.S.C. § 455.

Here, subsection (a) is the catch-all rule, and subsection (b)(1) is one of several specific provisions that overlap with it to some degree. Starting with subsection (b)(1), the Court has "personal knowledge of disputed evidentiary facts concerning the proceeding" because under the inquiry the Court has set up under Rule 8.2, only the Court can truly know the "factual" question of its own subjective intent in awarding fees.[4] To be clear, Plaintiffs maintain that this is not a matter of fact at all under Rule 8.2 and is instead counsel's own fair opinion and analysis about the Court's order awarding fees—analysis echoed in substantial Eighth Circuit briefing by Plaintiffs and numerous amici. Yet the Court's Second Order makes clear that it disagrees: under the disciplinary theory it is now investigating, the Court's own subjective intent has become the key piece of evidence. No party should be in a position of having to prove to a factfinder the

---

[4] Such personal knowledge need not be derived from an extrajudicial source. *See Liteky v. U.S.*, 510 U.S. 540, 552, 114 S.Ct.1147 (1994) ("Recusal is required *whenever* there exists a genuine question concerning a judge's impartiality, and not merely when the question arises from an extrajudicial source.") (emphasis original). Nonetheless, the Court's internal convictions about its subjective intent when it awarded fees are untestable and derive from nowhere but the Court itself, and so by definition they are an "extrajudicial source," even if they are partially derivative of a court proceeding.

17

opposite of what the factfinder has already decided with firm conviction: that very factfinder's own subjective intent. That is particularly true where the factfinder has already concluded that the "intent" directly implicates his own professional integrity and qualifications.

The problem under Rule 3.6 is similar: the Court is considering whether its own views regarding the Statements it found in the media—views it might hold six months from now or later, if the case is remanded to the Court—can render it so deeply biased against Plaintiffs that it results in "material prejudice." Again, only one person knows the answer to that question, and yet that same person sits as the Court in deciding whether it has been established for purposes of punishing an attorney. Further, if it were possible—let alone substantially likely—that media comments could exert such influence, recusal is all the more proper.

Finally, for the reasons set forth in Section II(B), *supra*, this has become a matter in which this Court's impartiality might reasonably be questioned. The Court has now decided, contrary to Ms. Hermann's intent as expressed in her apology letter and Plaintiffs' Response, that the Statements implicated its very integrity or qualifications: the core threshold inquiry for Rule 8.2. Any person's impartiality would reasonably be questioned in deciding whether criticism of his or her own integrity or qualifications had accurately struck home. And consistent with what would be expected from someone who feels indignation that their integrity has been impugned and must be vindicated, the Court has now shown that it views the stakes as very high: its Second Order shifts the inquiry from this particular decision—the subject of Ms. Hermann's actual Statements— into an overall examination of the Court's history in awarding fees in "constitutional claims." A reasonable observer might well conclude that this is not the inquiry a neutral factfinder (or, perhaps, the Western District en banc acting under the Local Rules) would order under Rule 8.2.

18

In short, even if the Western District had no local rule on point, this has now become a matter that requires recusal under § 455.

### III.     Plaintiffs respectfully request an administrative stay while this Court takes up this request.

A response to the Second Order is due in just one week. Plaintiffs respectfully request an administrative stay of the deadline to respond to the Second Order while the Court considers their requests, and an extension of their deadline to respond to that Order of 10 days from any decision by this Court declining to relinquish the matter to the Western District or recuse.

**CONCLUSION**

For the foregoing reasons, this Court should: (i) cease its investigation and, in its discretion, refer or relinquish its investigation to the Western District *en banc*; or, alternatively, (2) recuse under the Due Process Clause or 28 U.S.C § 455. Plaintiffs ask for a brief administrative stay while the Court considers this request, with a new deadline of ten days from any decision declining to relinquish this matter or recuse.

Respectfully submitted this 2nd day of June, 2023.

*/s/ Edward D. Greim*
Edward D. Greim
MO Bar No. 54034
Graves Garrett LLC
1100 Main Street, Suite 2700
Kansas City, MO 64105
Telephone: 816-256-3181
edgreim@gravesgarrett.com

*Counsel for Plaintiffs & Kimberly Hermann*

19

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail and/or facsimile. Parties may access the filing through the Court's electronic filing system.

*/s/ Edward D. Greim*
Edward D. Greim
Counsel for Plaintiffs