IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| BROOKE HENDERSON and JENNIFER LUMLEY, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 6:21-cv-03219-MDH ) |
| SCHOOL DISTRICT OF SPRINGFIELD R-12, BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF SPRINGFIELD R-12, GRENITA LATHAN, YVANIA GARCIA-PUSATERI, and LAWRENCE ANDERSON, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**ATTORNEY KIMBERLY HERMANN'S
RESPONSE TO SECOND SHOW CAUSE ORDER**

**COMES NOW** Attorney Kimberly Hermann, by and through the undersigned counsel, and in response to the Court's Show Cause Order dated May 24, 2023 [Doc. 128] states:

**I. This Court Should Recuse or Terminate its Investigation in Compliance with Local Rule 83.6, the Due Process Clause, and 28 U.S.C. §455.**

In its Second Show Cause Order, this Court stated that it "seeks *to substantiate* whether it is reasonable to believe a violation of Missouri Rule of Professional Conduct 4-8.2 has occurred." [Doc. 128 at 2] (emphasis added). Plaintiffs reiterate here and incorporate the arguments and objections they presented in three prior filings: (1) their Petition for Writ of Mandamus [Doc. 132], filed in the United States Court of Appeals for the Eighth Circuit, and denied on June 16, 2023[1];

---

[1] The Eighth Circuit's order summarily denying the Petition for Writ of Mandamus was not accompanied by an opinion or any statement from the Court explaining the basis of the denial. The denial of that petition does not constitute a decision on the merits of the issues raised therein. *See United States v. Dean*, 752 F.2d 535, 542 (11th Cir. 1985) (one

(2) their Motion to Refer or Recuse [Doc. 129]; and (3) their response to the First Order to Show Cause [Doc. 126].

Specifically, the inquiry this Court is now undertaking, and the Court's effort to "substantiate" whether it is reasonable for the Court to believe a violation of the Rules of Professional Conduct have occurred, are tasks reserved exclusively for the *en banc* court under the plain text of Rule 83.6. Plaintiffs respectfully submit that under Rule 83.6(d) this Court can proceed no further. Plaintiffs have also argued in their Writ Petition and Motion to Refer or Recuse that this Court must recuse under the Due Process Clause and under 28 U.S.C. § 455. Plaintiffs and Attorney Hermann reiterate and incorporate here all of those arguments and objections. Plaintiffs and Attorney Hermann make a response without waiver of their rights and solely to avoid a finding of contempt.

II. **Attorney Hermann preserves, reiterates, and does not waive the arguments raised in Plaintiffs' Response to the First Show Cause Order.**

Attorney Hermann incorporates by reference, reiterates, and does not waive the arguments made in Plaintiffs' Response to the First Show Cause Order, including, but not limited to:

- Attorney Hermann's statements do not violate Rule 3.6 because there is no risk of materially prejudicing an ongoing adjudicative proceeding. [Doc. 126 at 5].

- Missouri Rule 4-8.2, as cabined by the First Amendment, does not prohibit Attorney Hermann's statements. [*Id*. at 9].

- Attorney Hermann's statements do not violate the plain text of Rule 4-8.2. [*Id*. at 12].

- If Rule 4-8.2 is applied to impose an "objective" *mens rea* standard for attorneys and to shift the burden to the attorney to disprove its elements, then it fails First Amendment scrutiny as a content and viewpoint-based restriction on core political speech. [*Id*. at 20].

---

line order denying writ petition had no *res judicata* effect); United States v. Hubbard, 650 F.2d 293, 310 n. 62 (D.C. Cir. 1980) ("Nevertheless, because of the writ's extraordinary nature, this court's earlier denial, *without statement of reasons*, of the Church's petition for mandamus…has no bearing on our decision of these appeals.") (emphasis added).

### III. Attorney Hermann's General Responses to the Court's Demands.

1. <u>The basis for the Statements</u>. In its May 24 Show Cause Order, this Court orders Attorney Hermann to identify "any orders" the Court may have entered in prior cases that meet various criteria set by the Court, including constitutional claims where fees were awarded to plaintiffs or defendants. [Doc. 128 at 5]. However, as Plaintiffs have already argued in their Response to the First Order to Show Cause, the Statements did not state, imply, or reflect the view that this Court's attorneys' fee award somehow followed a pattern that can be discerned by viewing a trend in its other decisions. Instead, they reflected the opposite view. In particular, Attorney Hermann's Statements were opinions rationally based upon her observations that: (1) this Court acted in an unprecedented fashion by making a finding of frivolousness and awarding over $300,000, or over 100% of the fees demanded by the Defendants (when the few cases that do award fees to prevailing Defendants at all still see those fees reduced by a factor of appx. 90% [*see* Doc.103 at 15]), based on policy considerations, including the District's loss of education funding to the extent money was used to pay counsel to defend the case; and (2) this Court was acting pursuant to an agenda, or public policy criterion or view, that it openly and honestly referenced on the record.

This public policy view is in evidence in transcripts of extended status conferences attended by counsel in-person, decisions striking paragraphs of the Complaint *sua sponte* as "political argument," the absence of a fee factor reduction, and in various arguments the Court advanced in its decisions on the underlying case and on the fee application. As shown in the Response to the First Show Cause Order, Attorney Hermann relied heavily on the language of the Court's own remarks and orders, as it is the best evidence of its reasoning. [Doc. 126 at 13-19].

Both of these analyses rationally supported a reasonable opinion that this Court's fee award was unprecedented and driven by the Court's public policy criteria. They rationally supported an opinion that this Court's fee award would have the effect of chilling civil rights claims. This

includes not only claims where teachers have standing, but also other school district-related claims that raised similar issues of compelled speech in the area of race, such as claims that could be raised by parents of students subjected to trainings, compelled speech or unconstitutional conditions, or other conduct similar to that alleged in this case. Because of the unprecedented nature of the award, Attorney Hermann had reasonable basis to believe that the Court intended this result, and that the Court believed it was doing what justice required.

Neither of these opinions is capable of being proved "false." Neither reflects on or relates to the integrity or qualifications of the Court—to whom she has apologized

2. <u>Attorney Work Product and Interference with Appellate Jurisdiction</u>. The Second Show Cause Order arguably requires Attorney Hermann to publicly disclose attorney work product showing the specific attorney's fee decisions or orders she "considered" before making the Statements. The reasonableness of the fee award, however, is precisely the issue Plaintiffs are briefing and appealing now in the Eighth Circuit, which has taken exclusive jurisdiction of the question of whether this Court's fee award was reasonable in light of the law and precedent. Disclosure of Plaintiffs' attorneys' work product on that same question, in open court to both opposing counsel and the District Court, will have two deleterious effects.

First, this would effect a waiver of the protections of the attorney work product doctrine, and directly damage Plaintiffs while Defendants brief the issue.[2] Relatedly, this Court itself may take the case on reassignment if its decision is reversed and remanded, and it would be inappropriate and unfair for it now to view the research of Plaintiffs' counsel.

Second, requiring Plaintiffs to re-litigate the basis for their position on the fee issue (which is expressed in the Statements) in this Court by opening up their confidential work product, while

---

[2] Defendants' brief in the Eighth Circuit is currently due on Jul 17, 2023.

at the same time they are making the same arguments in the Eighth Circuit, is an interference with the appellate jurisdiction of the Eighth Circuit. The Eighth Circuit will decide whether this Court's decision constituted reversible error because—as 20 organizations and 16 states have argued in 11 separate amicus briefs—it will work a chilling effect on civil rights litigation.

Cognizant that this Court's Order must be obeyed to the extent possible and that the Court may not have considered the work product and appellate jurisdiction issues, Plaintiffs stand on their objections but have responded to this Court's Order as completely as possible. Specifically, they are citing all of the cases and decisions that were disclosed in briefing in this Court, which Attorney Hermann necessarily considered at all stages of this litigation and before making her Statements. For cases and decisions counsel considered but chose not to cite in briefing, Plaintiffs invoke the protection of the attorney work product doctrine.

## IV. Responses to Specific Inquiries Posed by the Second Show Cause Order.

### a. Whether particular statements made by Attorney Hermann, identified in the original Show Cause Order, were true and the basis for such belief.

As explained at length above, Attorney Hermann's statements were statements of her opinion and perception, rationally based on the Court's remarks on the record and its written decisions, and not based on any private knowledge. As such, her opinions cannot be false. Nonetheless, these opinions are squarely and rationally rooted in this Court's own statements.

Attorney Hermann's April 12th and April 13th Statements describe the outcome of a judicial proceeding or the practical and legal implications of that outcome. The April 12th Statement includes Attorney Hermann's opinions that the effect of assessing large attorneys' fee awards under Section 1988 is that individuals will be deterred from pursuing 1983 claims, effectively "closing the courthouse doors" to those plaintiffs who are chilled by the prospect of a six-figure loss if they try to vindicate a constitutional right. The April 13th Statement was of a

5

similar nature, indicating that this Court's decision will deter future similar lawsuits and that this was the "point" and "intent" of the fee decision. These were fair opinions for a public interest law firm to express based on the plain text of the Court's Order.

Plaintiffs pointed out that if any fees were to be assessed, a 90% downward adjustment, as has even been done in cases which, unlike the present case, involved plaintiffs who engaged in egregiously disruptive conduct, would sufficiently deter frivolous litigation without chilling future meritorious 1983 litigation. [Doc. 103 at 15]. This Court did not do so, bolstering the notion that the Court intended similar cases never being brought.

Relatedly, this Court explained the reasons for its conclusion that the Plaintiffs' claim was "frivolous." [Doc. 107, pp. 2-3]. A reasonable attorney would conclude that, in fact, this Court did intend to deter (that is, to chill) the filing of future cases similar to the Plaintiffs'. *Id*. A reasonable attorney would read this Court's decisions to determine what, in its view, made them frivolous. Here, this Court made clear that its finding of frivolousness was not based solely on its view that the coercion Plaintiffs experienced in the training sessions failed to constitute an "injury-in-fact" under existing case law. *Id*. at 2-3. After stating its lack of injury-in-fact opinion, this Court proceeded to discuss *other* supporting bases for its frivolousness finding. Plaintiffs' counsel can fairly argue that these supporting bases for assessing attorney's fees are essentially policy arguments by this Court—its own view or "agenda" about what is fair, and about what the law should be. Plaintiffs' counsel does not impugn this Court's integrity by disagreeing that these views should have driven any part of the Court's decisions on the merits, frivolousness, or fees.

In Plaintiffs' view, the first of this Court's alternative rationales was a policy argument. This Court characterized Plaintiffs' claim as follows: "Plaintiffs contend they should not have to

listen to, learn, or follow Defendants' description of equity and anti-racism discussed during the training because they personally disagree." [Doc. 88, p. 23]. It continued:

> The claim that the district should not conduct training for them to attend on policies applicable at work involving their employment because they disagree with them, however, is untenable. Such a ruling would make administration of a governmental unit such as a large, urban school district wholly unworkable. It would distort the employer-employee relationship. It is a frivolous claim and theory.

*Id*. at 24. That is, this Court thought that Plaintiffs' theory was "frivolous" and should be deterred because of the effect it would have on the administration of local government.

In subsequently taking up this Court's invitation to file a separate fee motion, the Defendants cited this language back to the Court, arguing for a finding of frivolousness because Plaintiffs' filing of a lawsuit "served as a detriment towards the very important policies the District put forth in the interests of its students. The training strove to address, increase, and enhance employees' understanding and sensitivity to race issues likely to be confronted by minority students." [Doc. 98 at 16]. This Court responded to this argument in its fee decision by returning to the reasoning and rationale from its summary judgment decision that Defendants had quoted, opining that Plaintiffs' lawsuit was frivolous because it amounted to an effort to "simply disregard a training that is lawful," and that sustaining such claims "would make the management of a large, urban school district untenable." [Doc. 107 at 3].[3]

---

[3] An early kernel of the Court's later opinion on summary judgment appears in the transcript of the initial scheduling conference, held November 16, 2021, in the courtroom. There, the Court asked Plaintiffs' counsel, "…[D]oesn't a school district in fact have an affirmative duty to see that racial justice occurs within its school district?" [Doc. 32 at 9]. After Plaintiffs' counsel began to explain the application of the "governmental speech doctrine," the Court pressed counsel for a case "in the school district context." As counsel began to answer that there was a "great deal of litigation," the Court interrupted to state, "Right. A bunch of the people who don't like the modern trend of race relations are now filing a bunch of lawsuits." [Doc. 32 at 9-10]. Here, the Court espoused the policy position it later cited to support its frivolousness opinion: that school boards should have the authority to manage their districts to support "racial justice," [Doc. 32 at 9], and that teachers or their lawyers should not be able to impede that goal by filing lawsuits that, in the Court's view, espouse the plaintiffs' "political" views instead of stating First Amendment claims.

Similarly, this Court characterized Plaintiffs' allegations of injury arising from the Defendants' anti-racism training as a purely "political dispute" and "frivolous political disagreement" that harmed students because, merely by having been asserted in federal court, it triggered defense costs that redirected funding from student education:

> Finally, the political undertones of Plaintiffs' allegations, when considered alongside the lack of a factual basis for their claims, demonstrate how Plaintiffs' lawsuit has trivialized the important work of the federal judiciary. Plaintiffs attempted to drag Defendants into a political dispute rather than seek remedy for a genuine harm. This Court is a forum for litigation of genuine disputes of fact and law alone, rather that frivolous political disagreement. Defendants have invested significant time and tax dollars into defending this lawsuit. These resources would have been better spent ensuring educational opportunities for students.

[Doc. 107 at 3]. This, too, echoed an argument this Court had earlier made in its summary judgment opinion:

> Taxpayer dollars which could have been devoted to enhancing the educational opportunity of the students served by the district have instead been diverted to the defense of this lawsuit. The students of the district deserve better. So too do the taxpayers whose hard-earned money is taxed by the district for the purpose of educating the children of the district in which they reside.

[Doc. 88 at 25].[4] Additionally, this Court's awarding of $312,869.50 without addressing Plaintiff's argument that a 90% reduction as in other awards for prevailing defendants was a sufficient deterrent [Doc. 103 at 15] or that it was giving the district *more* money than even it ultimately asked for [*compare* Doc. 98 at 22 *with* Doc. 106 at 9] is evidence that this Court wished to strongly emphasize these points.

---

[4] Long before granting the Defendants' summary judgment motion, at the initial status conference, the Court had expressed the following opinion: "I guess my struggle with Paragraphs 4 and 5 is they seem to me to be political statements and not allegations relevant to a complaint. Why are they in there?" Plaintiffs' counsel responded, "We think it's important to understand the relevant backdrop here. I think the Court's point is actually well taken but – goes straight to the heart of the case, which is that the teachers object to being forced to adopt a political position with which they disagree and so framing we thought was necessary to outline what those respective political positions are." [Doc. 32 at 7]. The following day, on its own motion, the Court struck those paragraphs from the introduction, opining that "Plaintiffs appear to use these paragraphs only to imply that SPS' views on racism, racial discrimination, and related issues are incorrect and that Plaintiffs' own differing views are correct. Such statements are purely political advocacy and are therefore clearly immaterial and impertinent as required under Rule 12(f)." [Doc. 30 at 2].

The April 11 Statement of Attorney Hermann's opinion is similarly rooted in this Court's own words. This opinion is nearly identical to the April 12 and 13 Statements: that, in the opinion of a civil rights attorney used to bringing similar lawsuits, this Court did indeed intend to foreclose Section 1983 claims like Plaintiffs' against "anti-racist" trainings in public schools. A reasonable attorney could form that opinion based on the Court's statements that it would find Plaintiffs' claim and theory "frivolous" even if they were able to show injury-in-fact, and that the money spent defending that case would have been better devoted elsewhere. [Doc. 88 at 23]. That this Court has come to hold this view does not speak to its qualifications or integrity.

Additionally, the burden under Rule 4-8.2 is for the complainant to prove falsity, not for the attorney-respondent to prove truthfulness. *See Standing Comm. v. Yagman*, 55 F.3d 1430, 1438 (9th Cir. 1995) (internal citation omitted). Finally, it should never be the case that the aggrieved party also considers issues of fact under Rule 4-8.2. This Court cannot and should not make its own intent and reasoning the question of "fact" that must be proved or disproved for purposes of Rule 4-8.2.

> **b. Identify in detail any research interviews, or findings supporting her belief that her statements were true, including prior orders by this Court in other cases.**

Attorney Hermann's statements were statements of opinion which are neither true nor false. Even so, without waiving work product and incorporating her representations above in Section III, Attorney Hermann identifies the following sources which supported the basis of her opinions:[5]

- *Access Now, Inc. v. Town of Jasper, Tenn.*, 2004 WL 1873734 (E.D. Tenn. 2004)

- *American Family Life Assur. Co. of Columbus v. Teasdale*, 733 F.2d 559, 570 (8th Cir.1984)

- *Animal Welfare Inst. v. Feld Entertainment, Inc.*, 944 F.Supp.2d 1, 16 (D.D.C. Cir. 2013)

---

[5] To protect Plaintiffs' claim of work product, only the sources cited in public briefing prior to the Statements are identified.

- *Bond v. Keck*, 629 F. Supp. 225, 227 (E.D. Mo. 1986), *aff'd*, 802 F.2d 463 (8th Cir. 1986)

- *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)

- *Clajon Production Corp. v. Petera*, 70 F.3d 1566, 1581 (10th Cir. 1995)

- *CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 421 (2016)

- *Cummings v. Benco Bldg. Servs.*, 11 Cal. App. 4th 1383, 1389-90 (1992)

- *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)

- *Equal Emp. Opportunity Comm'n v. CRST Van Expedited, Inc.,* 944 F.3d 750, 756 (8th Cir. 2019)

- *Flowers v. Jefferson Hosp.*, 49 F.3d 391, 392-93 (8th Cir. 1995)

- *Garmong v. County of Lyon*, 807 Fed. Appx. 636, 639 (9th Cir. 2020)

- *Grant v. Farnsworth*, 869 F.2d 1149, 1152 (8th Cir. 1989)

- *Jensen v. Stangel*, 762 F.2d 815, 818 (9th Cir.1985)

- *Koester v. YMCA Greater St. Louis*, 2018 U.S. Dist. LEXIS 757732, at*3 (E.D. Mo. May 4, 2018)

- *Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228, 242 (1st Cir. 2010)

- *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992)

- *Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers*, 26 F.3d 842 (8th Cir. 1994)

- *Morrison v. Bd. of Educ. of Boyd Cnty.*, 521 F.3d 602, 611 (6th Cir. 2008)

- *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)

- *Nguyen v. Foley*, 2022 WL 1026477, at *3 (D. Minn. 2022)

- *Piljan v. Mich. Dept. of Soc. Servs.*, 585 F.Supp. 1579, 1582 (E.D. Mich. 1984)

- *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1303 (Fed. Cir. 2018)

- *Rutherford v. Evans Hotels, LLC*, 2021 WL 1945729, at *2-3 (S.D. Cal. 2021)

- *Steelman v. Crib*, 2012 WL 4026686, at *5 (W.D. Mo. 2012)

- *Steelman v. Crib*, 2012 U.S. Dist. LEXIS 129905, at *16 (W.D. Mo. Sept. 12, 2012)

- *Steward v. UPS of America, Inc.*, 2008 WL 2704612 at *3 (W.D. Okla. 2008)
- *Sullivan v. Sch. Bd. of Pinellas Cty.*, 773 F.2d 1182, 1189 (11th Cir. 1985)
- *Van Nguyen v. Foley*, 2022 U.S. Dist. LEXIS 64118, at *5-6 (D. Minn. Apr. 6, 2022)
- *Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1559 (11th Cir.1995)
- *Whitson v. LM Serv., Inc.*, 2003 WL 685873 (E.D. Mo. 2003)
- *Williams v. City of Carl Junction, Mo.,* 523 F.3d 841, 843 (8th Cir. 2008)
- *Wilson v. Cont'l Mfg. Co.*, 599 F. Supp. 284, 286-87 (E.D. Mo. 1984)

    **c. Identify any orders by this Court awarding attorney fees in favor of a party against whom a constitutional claim was filed, which Attorney Hermann considered prior to making her statements.**

Without waiving work product and incorporating her representations above in Section III, Attorney Hermann identifies no responsive orders from this Court cited in the public briefing prior to the Statements. Attorney Hermann further refers the Court to Section III, above, for a discussion of why the lack of such orders does not support a determination that the Statements were false.

    **d. Identify any orders by this Court awarding attorney fees in favor of a party filing a constitutional claim which Attorney Hermann considered.**

Without waiving work product and incorporating her representations above in Section III, Attorney Hermann identifies no responsive orders from this Court cited in the public briefing prior to the Statements.

    **e. Specifically address why Attorney Hermann's statements referred to claims by parents rather than claims by public school employees, subject of the instant litigation.**

It is Attorney Hermann's opinion that shifting fees and designating an educator's claims as frivolous will chill other litigants seeking to remedy similar constitutional violations in school settings. These could include parents of students subjected to compelled speech, content-based restrictions, viewpoint discrimination, retaliation, or unconstitutional conditions in trainings,

workshops, and tests, particularly in the area of race. As argued by amici in the Eighth Circuit, this Court's order regarding attorney's fees will have a ripple effect. *See* Amicus Brief of Alliance Defending Freedom, American Civil Liberties Union, et al. as Amici Curiae Supporting Appellant, Henderson v. Springfield R-12 School District, No. 23-1374 (8th Cir. May 18, 2023) ("The district court's ruling on fees, if allowed to stand, would have a serious chilling effect on [amici's] clients' willingness to bring First Amendment challenges, because they almost universally could not afford to cover defendants' legal fees."). Parents of children in public school are certainly a logical expansion of the class of plaintiffs affected in this case.

> **f. Specifically identify any case involving parents' constitutional rights considered by Attorney Hermann in making the statements, including any case in which this Court awarded attorney fees against parents.**

Without waiving work product and consistent with her representations above in Section III, Attorney Hermann identifies the following sources considered and cited in the public briefing in this case before the Statements were made:

- *A M v. Cash*, 585 F.3d 214 (5th Cir. 2009)
- *Bd. of Educ. v. Pico*, 457 U.S. 853 (1982)
- *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954)
- *Brown v. Hot, Sexy & Safe Prod.*, 68 F.3d 525 (1st Cir. 1995)
- *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159 (3d Cir. 2005)
- *Doe v. United States*, 901 F.3d 1015 (8th Cir. 2018)
- *Duren v. Byrd*, 2021 WL 3848105 (M.D. Tenn. 2021)
- *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988)
- *Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038 (2021)
- *McCarthy v. Ozark Sch. Dist.*, 359 F.3d 1029 (8th Cir. 2004)

- *Menders v. Loudoun Cnty. Sch. Bd.* No. 1:21-cv-669, 2022 U.S. Dist. LEXIS 10157 (E.D. Va. Jan. 1, 2022)

- *Morrison v. Bd. of Educ. of Boyd Cnty.*, 521 F.3d 602 (6th Cir. 2008)

- *Padilla v. South Harrison R-II Sch. Dist.*, 181 F.3d 992 (8th Cir. 1999)

- *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007)

- *Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008)

- *Preskar v. United States*, 248 F.R.D. 576 (E.D. Cal. 2008)

- *Robertson v. Anderson Mill Elem. Sch.*, 989 F.3d 282 (4th Cir. 2021)

- *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943)

## CONCLUSION

Plaintiffs and Attorney Hermann respectfully renew their request that this Court immediately end its investigation and recuse itself from making any further findings under its own disciplinary complaint.

Respectfully submitted this sixteenth day of June, 2023.

/s/ *Edward D. Greim*
Edward D. Greim
MO Bar No. 54034
Graves Garrett LLC
1100 Main Street, Suite 2700
Kansas City, MO 64105
Telephone: 816-256-3181
edgreim@gravesgarrett.com

*Counsel for Plaintiffs &*
*Kimberly Hermann*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail and/or facsimile. Parties may access the filing through the Court's electronic filing system.

*/s/ Edward D. Greim*
Edward D. Greim
Counsel for Plaintiffs
